IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANSELMO FLORES PEREZ, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| V. | § | No. 3:25-cv-2920-K-BN |
| | § | |
| KRISTI NOEM, in her official capacity | § | |
| as Secretary of the Department of | § | |
| Homeland Security, ET AL., | § | |
| | § | |
| Respondents. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner Anselmo Flores Perez ("Flores Perez"), detained at the Prairieland Detention Center, a facility in this district, filed this habeas action under 28 U.S.C. § 2241 on October 28, 2025 with the assistance of counsel, arguing that his detention by immigration authorities without a bond hearing at least violates the Immigration and Nationality Act ("INA") and the due process clause of the United States constitution. *See* Dkt. No. 1.

Related to the requested habeas relief, Flores Perez also filed an emergency motion for a temporary restraining order ("TRO") and/or preliminary injunction. *See* Dkt. No. 2.

And United States District Judge Ed Kinkeade referred the habeas action to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference.

After reviewing Flores Perez's initial filings in this case, the undersigned

determined that service and an expedited response from the United States Attorney's Office were required. *See* Dkt. No. 8. A response was filed. *See* Dkt. Nos. 10 & 11. And Flores Perez replied. *See* Dkt. No. 12.

And, for the reasons discussed below, the Court should grant in part the habeas petition [Dkt. No. 1] and deny the motion for a TRO [Dkt. No. 2].

## Applicable Background

According to Florez Perez, he "is a citizen of Mexico who entered the [United States] without inspection decades ago," Dkt. No. 1, ¶ 13, while the government contends that he "entered the United States without admission or parole at an unknown place and time," Dkt. No. 10 at 4; *see also* Dkt. No. 1, ¶¶ 20-21 ("Mr. Flores Perez is a citizen and native of Mexico who last entered the United States without inspection (EWI) decades ago. Mr. Flores Perez is in a common-law marriage to his children's mother and is the sole financial provider for his family which includes two U.S. citizen children, ages 17 and 19. His family relies on him heavily, as his 19-year-old son was diagnosed with Leukemia in 2023, and Mr. Flores Perez is responsible for taking him to the doctor. His 17-year-old son is enrolled in advanced classes and plans to graduate high school one year early. Mr. Flores Perez is employed as a manager. He has resided in the U.S. since that time, establishing significant ties, including filing taxes since 2006, paying rent, owning four vehicles, and holding a forklift certificate.")

Florez Perez was arrested on a traffic stop on October 21, 2025 and held at a

jail in Euless, Texas where he was interviewed by immigration officials, who detained him without a bond hearing and transported him to an ICE facility. *See* Dkt. No. 1, ¶ 22; Dkt. No. 10 at 4.

After that, Flores Perez was issued a Notice to Appear ("NTA") and remains in ICE custody. *See id.*; Dkt. No. 11 at 4 (NTA) (indicating that Flores Perez is not an "arriving alien" but "an alien present in the United States who has not been admitted or paroled").

## Legal Standards and Analysis

This habeas action is another in a flood of similar actions filed after the Board of Immigration Appeals ("BIA") eliminated the ability of immigration judges ("IJs") to make individualized bond determinations as to certain persons placed in removal proceedings. *See, e.g.*, Kyle Chaney, *More than 100 judges have ruled against the Trump admin's mandatory detention policy* (Oct. 31, 2025, 4:29 PM), https://www.politico.com/news/2025/10/31/trump-administration-mandatory-detention-deportation-00632086.

As background,

[t]wo statutes in the [INA] principally govern [these] detention[s]: 8 U.S.C. §§ 1225 and 1226. Section 1226 provides the general process for arresting and detaining noncitizens who are present in the United States and eligible for removal. 8 U.S.C. § 1226. The Supreme Court has explained that Section 1226(a) "sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of an alien 'pending a decision on whether the alien is to be removed from the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) (quoting § 1226(a)). "[T]he Attorney General 'may release' an alien detained

under § 1226(a) 'on bond or conditional parole.'" *Id.* (citation modified). But "aliens who are covered by § 1225(b)(2) are detained pursuant to a different process" and "'shall be detained for a [removal] proceeding' if an immigration officer 'determines that [they are] not clearly and beyond a doubt entitled to be admitted' into the country." *Id.* (quoting § 1225(b)(2)(A)). Hence, "noncitizens detained under section 1225(b)(2) must remain in custody for the duration of their removal proceedings, while those detained under section 1226(a) are entitled to a bond hearing before an IJ at any time before entry of a final removal order." *See, e.g.*, *Rodriguez v. Bostock*, ___ F. Supp. 3d ____, 2025 WL 2782499, at *3 (W.D. Wash. Sept. 30, 2025).

*Covarrubias v. Vergara*, No. 5:25-CV-112, 2025 WL 2950097, at *2 (S.D. Tex. Oct. 8, 2025).

And "[t]he principal issue" in these cases "is whether [the habeas petitioner] has been erroneously categorized as a detainee subject to 8 U.S.C. § 1225(b)(2), which prescribes mandatory detention during removal proceedings, or if he [or she] is subject to 8 U.S.C. § 1226(a), which provides for discretionary detention and a bond hearing regarding whether the noncitizen is a flight risk or poses a danger to the community." *Id.*

Against this background, the undersigned turns to Flores Perez's request for relief.

## I.    Exhaustion of Administrative Remedies

As a threshold matter, Respondents argue that the Court should deny Flores Perez's claims because he has not exhausted his administrative remedies. *See* Dkt. No. 10 at 4-5. Respondents cite "the general rule that parties exhaust prescribed remedies before seeking relief from the federal courts." *Id.* at 4.

But, as Respondents note, "the [INA] does not mandate exhaustion for situations other than appeals for final orders of removal." *Id.* at 5; *see also Lopez-Arevelo v. Ripa*, ___ F. Supp. 3d ____, No. EP-25-cv-337-KC, 2025 WL 2691828, at *6 (W.D. Tex. Sept. 22, 2025) ("Under the INA exhaustion of administrative remedies is only required by Congress for appeals on final orders of removal." (quoting *Garza-Garcia v. Moore*, 539 F. Supp. 2d 899, 904 (S.D. Tex. 2007))); 8 U.S.C. § 1252(d)(1) ("A court may review a final order of removal only if – the alien has exhausted all administrative remedies available to the alien as of right.").

Respondents contend that Flores Perez "has not yet attempted to obtain bond from an [IJ], and so any request at this time to order a bond hearing via a writ of habeas corpus is premature, at best." Dkt. No. 10 at 5.

But they also point out that the BIA "affirmed 'the Immigration Judge's determination that he did not have authority over [a] bond request'" by a noncitizen who has resided in the United States for more than two years (which describes Flores Perez). *Id.* at 9 (quoting *In re Yajure Hurtado*, 29 I&N Dec. 216, 220 (BIA 2025)). And, so, Respondents argue that Flores Perez must first use the very remedies that, according to Respondents, the BIA has deemed unavailable to him.

Requiring Flores Perez to request a bond hearing before an IJ and (if bond were denied) appeal the decision "would be inappropriate because it would exacerbate his alleged constitutional injury – detention without a bond hearing." *Lopez-Arevelo*, 2025 WL 2691828, at *6 (citing *Petgrave v. Aleman*, 529 F. Supp. 3d 665, 672 n.14

- 5 -

(S.D. Tex. 2021)); *see also Chiliquinga Yumbillo v. Stamper*, No. 2:25-cv-479-SDN, 2025 WL 2783642, at *3 (D. Me. Sept. 30, 2025) (finding that requiring petitioner to exhaust administrative remedies by appearing before an IJ would not serve the purposes of the common-law exhaustion doctrine because petitioner could suffer irreparable harm).

And, so, the undersigned finds that Flores Perez is not required to seek a bond hearing before an IJ or exhaust other administrative remedies and that the Court may properly consider his claims.

## II.    The INA

The undersigned first finds that detaining Flores Perez without a bond hearing under Section 1225(b) violates the INA for the reasons succinctly explained in *Covarrubias*, 2025 WL 2950097, at *2, which, in turn, relied on almost every other federal district court in this circuit and elsewhere that has tackled this issue:

> [Flores Perez] contends that he is being detained under Section 1226(a) and should have a bond hearing, but Respondents argue that he is subject to mandatory detention under Section 1225(b)(2), and therefore, not entitled to a bond hearing.
>
> The difference in interpretation emanates from the Government's recent reevaluation of immigration detention authority. The Department of Homeland Security (DHS) and Department of Justice (DOJ) released interim guidance on July 8, 2025, announcing a new legal position on detention and release authorities. The guidance interprets INA Section 235 (8 U.S.C. § 1225) as applying to the detention of all "applicants for admission," including all noncitizens who have not been admitted, whether or not they arrive at a port of entry.....
>
> [W]hether [Flores Perez] falls under Section 1226(a) or 1225(b)(2) is a matter of statutory interpretation. Statutory interpretation is the province of the courts, not agencies. *Loper Bright Enters. v. Raimondo*,

603 U.S. 369, 413 (2024).

> The [undersigned] finds that Section 1226, not Section 1225, applies to [Flores Perez's] detention. As almost every district court … has concluded, "the statutory text, the statute's history, Congressional intent, and § 1226(a)'s application for the past three decades" support application of Section 1226. *Buenrostro-Mendez v. Bondi*, No. H-25-3726, 2025 WL 2886346, at *3 (S.D. Tex. Oct. 7, 2025) (Rosenthal, J.) (collecting cases).

*Id.* at *3 (cleaned up); *see also Buenrostro-Mendez*, 2025 WL 2886346, at *3 ("The court need not repeat the 'well-reasoned analyses' contained in these opinions and instead simply notes its agreement. The respondents have failed to provide controlling authorities or persuasive reasons that would justify reaching a different result. Section § 1226(a), not § 1225(b), applies to [the petitioner]." (cleaned up)).

## III. Procedural Due Process

### A. Availability of Procedural Due Process Protections

The undersigned also finds that detaining Flores Perez without a bond hearing violates his Fifth Amendment rights.

In this case, Respondents elect not to expressly rely on *Department of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020), to oppose Flores Perez's due process arguments. *See* Dkt. No. 10 at 17-22.

Regardless, because the undersigned finds that Flores Perez is erroneously categorized as detained under Section 1225(b)(2), the Court should reject Respondent's related argument that, because Section 1225 "says nothing 'whatsoever about bond hearings' … [n]o procedural due process claim is stated." Dkt. No. 10 at

19 (quoting *Jennings*, 583 U.S. at 297).

And, to the extent that Respondents may rely on *Thuraissigiam* to deny this due process claim, the undersigned agrees with the court in *Lopez-Arevelo* and other courts in the Fifth Circuit that have found *Thuraissigiam* to be distinguishable in this context. *See* 2025 WL 2691828 at *7-10; *see also, e.g.*, *Vieira v. De Anda-Ybarra*, ___ F. Supp. 3d ____, No. EP-25-cv-432-DB, 2025 WL 2937880, at *4-5 (W.D. Tex. Oct. 16, 2025); *Gonzales Martinez v. Noem*, No. EP-25-cv-430-KC, 2025 WL 2965859, at *4 (W.D. Tex. Oct. 21, 2025); *Santiago v. Noem*, No. EP-25-cv-361-KC, 2025 WL 2792588, at *7-10 (W.D. Tex. Oct. 2, 2025); *Hernandez-Fernandez v. Lyons*, No. 5:25-cv-773-JKP, 2025 WL 2976923, at *7-8 (W.D. Tex. Oct. 21, 2025).

In *Thuraissigiam*, "[t]he [Supreme] Court did not address whether noncitizens mandatorily detained under § 1225(b) have a constitutional due process right to challenge the fact or length of their detention, as [Flores Perez] does here." *Lopez-Arevelo*, 2025 WL 2691828, at *8. Unlike in *Thuraissigiam*, where the petitioner challenged his deportability and the denial of his asylum admission, Flores Perez challenges his detention without a bond hearing. *See* 591 U.S. at 114-15.

In the context of detention under Sections 1225(b) and 1226(a), the United States Court of Appeals for the Fifth Circuit has "expressly left open the constitutional due process question" for lower courts to consider. *Lopez-Arevelo*, 2025 WL 2691828, at *8 (citing *Jennings*, 583 U.S. at 312).

The petitioner in *Thuraissigiam* was also stopped and detained "within

twenty-five yards of the border" and was not released or permitted to reside in the United States. 591 U.S. at 114.

But Flores Perez has resided in the United States for decades. *See* Dkt. No. 1, ¶ 20; *Lopez-Arevelo*, 2025 WL 2691828, at *9 (distinguishing *Thuraissigiam* because petitioner had resided in the United States for three years).

And, so, Flores Perez is entitled to procedural protections under the Fifth Amendment's Due Process Clause. And the undersigned will consider his claim that his detention violates his due process rights.

### B. *Mathews* Balancing Test

"To determine whether a civil detention violates a detainee's due process rights, courts apply the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976)." *Martinez v. Noem*, No. 5:25-cv-1007-JKP, 2025 WL 2598379, at *2 (W.D. Tex. Sept. 8, 2025) (cleaned up). The three factors to consider are (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335 (cleaned up).

"The essence of due process is the requirement that 'a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it.'" *Id.*

at 348 (quoting *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 171-72 (1976) (Frankfurter, J., concurring)).

### 1.    Private Interest

"Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty [the Due Process] Clause protects." *Vieira*, 2025 WL 2937880, at *6 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 690(2001)). Even though Flores Perez entered the United States without inspection, he has been present in our society for decades. And, based on that, the undersigned cannot find that he did not acquire a "cognizable interest in his freedom from detention that deserves great weight and gravity." *Vieira*, 2025 WL 2937880, at *6.

And, so, the first factor weighs in favor of Flores Perez.

### 2.    Risk of Erroneous Deprivation and Value of Additional Safeguards

As to the second factor, Flores Perez is in custody. Without a bond hearing, he will likely remain in custody. And the risk of an arbitrary deprivation is greater given the BIA's new interpretation of Section 1225(b)(2). *See Vieira*, 2025 WL 2937880, at *7, *Lopez-Arevelo*, 2025 WL 2691828, at *11.

"[A]gency decisionmakers regularly 'conduct[] individualized custody determinations … consider[ing] flight risk and dangerousness.'" *Gonzales Martinez*, 2025 WL 2965859, at *4 (cleaned up). So a bond hearing would "give [Flores Perez] the opportunity to be heard and receive a meaningful assessment of whether he is

dangerous or likely to abscond." *Lopez-Arevelo*, 2025 WL 2691828, at *11.

And, so, a bond hearing would reduce the risk of an erroneous deprivation of Flores Perez's liberty.

The second factor therefore weighs in favor of Flores Perez.

### 3.    Government's Interest

Respondents argue that the government has the constitutional power to detain Flores Perez without bond "for the limited purpose of removal proceedings and determining his removability." Dkt. No. 10 at 18.

But they do not explain their interest in making those determinations while detaining Flores Perez without bond.

And, in any event, the government's interest in ensuring that Flores Perez appears for his removal proceedings "would be squarely addressed through a bond hearing." *Gonzalez Martinez*, 2025 WL 2965859, at *4.

And, so, the third factor also weighs in favor of Flores Perez.

Because all three *Mathews* factors support Flores Perez, the undersigned finds that denying him a bond hearing under Section 1225(b)(2) deprives him of his procedural due process rights under the Fifth Amendment.

## IV.    Substantive Due Process

Because the denial of a bond hearing violates Flores Perez's procedural due process rights and the INA, the undersigned declines to address any substantive due process claim that Flores Perez may make. *See Santiago*, 2025 WL 2792588, at *6 n.2

("[B]ecause the Court grants [the petition] on procedural due process grounds, the Court need not reach [the petitioner's] substantive due process … claims.").

## V.    Motion for TRO

As "[a] TRO is simply a highly accelerated and temporary form of preliminary injunctive relief," "[t]o obtain a temporary restraining order, an applicant must show entitlement to a preliminary injunction." *Horner v. Am. Airlines, Inc.*, No. 3:17-cv-665-D, 2017 WL 978100, at *1 (N.D. Tex. Mar. 13, 2017) (cleaned up).

But granting a preliminary injunction "is an extraordinary remedy which requires the movant to unequivocally show the need for its issuance." *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997) (citing *Allied Mktg. Grp., Inc. v. C.D.L. Mktg., Inc.*, 878 F.2d 806, 809 (5th Cir. 1989))

And, so, to obtain preliminary injunctive relief, a movant must unequivocally "show (1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin, and (4) granting the preliminary injunction will not disserve the public interest." *Bluefield Water Ass'n, Inc. v. City of Starkville, Miss.*, 577 F.3d 250, 252-53 (5th Cir. 2009) (cleaned up); *accord Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974).

And the Fifth Circuit "has repeatedly cautioned that [such relief] should not be granted unless the party seeking it has clearly carried the burden of persuasion

on all four requirements." *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 386 (5th Cir. 2013) (cleaned up).

"The purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits." *Canal Auth.*, 489 F.2d at 576 (cleaned up).

So the decision on a motion seeking a TRO or preliminary injunction does "not amount to a ruling on the merits" of a plaintiff's claims, *Jonibach Mgmt. Trust v. Wartburg Enters., Inc.*, 750 F.3d 486, 491 (5th Cir. 2014), considering that "the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits" and "may be challenged at a later stage of the proceedings," *id.* (cleaned up).

In short, a TRO or preliminary injunction is not a device "to give a plaintiff the ultimate relief he seeks" through his claims. *Peters v. Davis*, No. 6:17CV595, 2018 WL 11463602, at 2 (E.D. Tex. Mar. 28, 2018); *accord Lindell v. United States*, 82 F.4th 614, 618 (8th Cir. 2023) ("This Court has repeatedly recognized that the purpose of injunctive relief is to preserve the status quo; it is not to give the movant the ultimate relief he seeks."); *Kane v. De Blasio*, 19 F.4th 152, 163 (2d Cir. 2021) ("The purpose of a preliminary injunction is not to award the movant the ultimate relief sought in the suit but is only to preserve the status quo by preventing during the pendency of the suit the occurrence of that irreparable sort of harm which the movant fears will occur." (cleaned up)). And, so, a motion or

application for a TRO or preliminary injunction is properly denied when it is no more than a "motion to win."

Here, the arguments supporting Flores Perez's TRO motion focus on the harms of mandatory detention without bond. And, so, he appears to seek the same or similar relief in their habeas petition and TRO motion.

Insofar as Flores Perez's seeks the same ruling on the merits as the habeas petition, the undersigned finds that the TRO motion improperly seeks ultimate relief. *See Buenrostro-Mendez*, 2025 WL 2886346, at *4 (denying TRO as moot because it sought the same relief as the petitioner's habeas petition – to release the petitioner from custody or order a bond hearing).

And, so, the Court should deny the TRO motion [Dkt. No. 2].

## Remedy

Most courts confronting this issue have determined that the appropriate relief is a bond hearing. *See Lopez-Arevelo*, 2025 WL 2691828, at *12-13 (collecting cases); *Vieira*, 2025 WL 2937880, at *7 (collecting cases). And, so, the Court should order that Flores Perez be given a bond hearing before an IJ and decline to award any other requested relief at this time.

## Recommendation

The Court should grant in part Petitioner Anselmo Flores Perez's application for a writ of habeas corpus under 28 U.S.C. § 2241 [Dkt. No. 1] and require Respondents to provide him with a bond hearing before an immigration judge. And

the Court should deny the motion for a temporary restraining order [Dkt. No. 2].

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. ' 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judges' findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: November 14, 2025

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE